THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE REDMOND, on behalf of herself and on behalf of her minor children ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT, and MICKEY STARKS, on behalf of himself, <br><br> Plaintiffs, <br><br> Vs. <br><br> The CITY OF CHICAGO, a municipal corporation; CHICAGO POLICE OFFICERS <br> A. Carvajal, Star 13455; M. Collins, Star 16346; <br> J. Gali, Star 12394; <br> R. Garcia, Star 11788; R. Graal, Star 13320; <br> W. Langdon, Star 12652; J. Pedregosa. Star 10861; <br> Sergeant P. Thompson, Star 945; <br> T. Van Amerongen, Star 19468; <br> D. Vasquez, Star 2772; B. Yamaji, Star 17650 <br><br> Defendants. | No. 19 CV 3942 <br><br> Honorable John Blakey <br><br><br><br><br><br><br><br><br> **JURY DEMANDED** |

**FIRST AMENDED COMPLAINT AT LAW**

Plaintiffs DOMINIQUE REDMOND, on behalf of herself and on behalf of her three minor children ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT, and MICKEY STARKS, on behalf of himself, by and through their attorneys, Law Offices of Jeffrey Granich, complains of Defendants, City of Chicago ("City") and Chicago Police Officers A. Carvajal Star No. 13455, M. Collins Star No. 16346, J. Gali Star No. 12394, R. Garcia Star No. 11788, R. Graal Star No. 13320, W. Langdon Star No. 12652, J. Pedregosa Star No. 10861, P. Thompson Star No. 945, T. Van Amerongen Star No. 19468, D. Vasquez Star No. 2772, and B. Yamaji Star No. 17650, and unknown Chicago Police Officers, ("Defendant Officers") and states as follows:

**Introduction**

1. In the late evening hours of March 14, 2018, Defendant police officers terrorized the Plaintiffs and three minor children at gun point after illegally breaking down the front door of their home, illegally detaining them at gunpoint, and illegally searching their home without a valid search warrant, consent, or exigent circumstances.

2. The Defendant police officers' unlawful and unreasonable conduct is the product of policies and practices of the Chicago Police Department ("CPD"), which has for years permitted its officers to violate the rights of residents of Chicago through unlawful use of force, unlawful

1

use of force against and in the presence of children, unlawful warrantless searches of private residences, without fear of being disciplined or investigated for such misconduct.

3. For years CPD has failed to establish obviously necessary policies or safeguards to ensure its officers execute search warrants on the correct listed address. This obvious failure of official policy and widespread practice has caused numerous illegal warrantless invasions of private family homes in Chicago by Chicago police officers prior to March 14, 2018. The City and its policymakers, for years, have been aware of this continuous constitutional problem but have continually turned a blind eye to the problems and failed to reform its obvious deficient policies, which in turn caused and was the moving force behind the constitutional violations committed against the Plaintiffs.

4. Additionally, for years, the City of Chicago and the CPD has permitted its police officers to brutalize Chicago residents without any meaningful training, supervision, post incident review, or discipline. The CPD has allowed its police officer to engage in the constitutional misconduct as described in this complaint, including excessive force against children, without meaningful discipline to the officers and has maintained and encouraged the code of silence within the police department which in turn caused and was the moving force behind the constitutional violations committed against Plaintiffs.

## Jurisdiction

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

6. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

7. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## Parties

8. At the time of all relevant events, plaintiff Arion Pratt was a three-year-old boy residing with his mother, siblings, and Mickey Starks at 1225 W. 81st Street, Apartment 3W, Chicago, Illinois.

9. At the time of all relevant events, plaintiff Arnold Pratt was an eight-year-old boy residing with his mother, siblings, and Mickey Starks at 1225 W. 81st Street, Apartment 3W, Chicago, Illinois.

10. At the time of all relevant events, plaintiff Arianna Redmond was a thirteen-year-old girl residing with her mother, siblings, and Mickey Starks at 1225 W. 81st Street, Apartment 3W, Chicago, Illinois.

11. Plaintiff Dominique Redmond is Arianna, Arnold, and Arion's natural mother. At the time of all relevant events, Ms. Redmond resided at 1225 W. 81st Street, Apartment 3W, Chicago, Illinois.

12. At the time of all relevant events, plaintiff Mickey Starks was the boyfriend of Dominique Redmond and resided at 1225 W. 81st Street, Apartment 3W, Chicago, Illinois.

13. Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

14. At the time of all relevant events, defendants Chicago Police Officers A. Carvajal Star No. 13455, M. Collins Star No. 16346, J. Gali Star No. 12394, R. Garcia Star No. 11788, R. Graal Star No. 13320, W. Langdon Star No. 12652, J. Pedregosa Star No. 10861, P. Thompson Star No. 945, T. Van Amerongen Star No. 19468, D. Vasquez Star No. 2772, and B. Yamaji Star No. 17650 were police officers for the City of Chicago and were acting under the color of law and within the scope of their employment.

15. At the time of all relevant events, the currently unknown defendant police officers were police officers for the City of Chicago and were acting under the color of law and within the scope of their employment.

## Facts

16. At all times relevant hereto, Plaintiffs all lived as a family at 1225 W. 81st Street, Apartment number 3W, in Chicago, Illinois.

17. At all times relevant hereto, Plaintiffs apartment building had its street address clearly posted and visible outside the front entrance doorway.

18. In the late evening hours of March 14, 2018, Plaintiffs Dominique Redmond and Mickey Starks had put their three minor children plaintiffs to bed and were themselves turning in for the night.

19. Out of nowhere, Plaintiffs heard loud "bangs" coming from the door of their home and were immediately placed in fear that their home was being broken into by robbers.

20. At this time, without a valid search warrant or exigent circumstances, Defendant police officers were forcefully and violently breaking down the front door of Plaintiffs' home to gain entry.

21. At no time did Defendant police officers receive or request consent to enter Plaintiffs' home.

22. At no time did Defendant police officers knock and announce their office prior to their forced entry.

23. At no time did Defendant police officers have a valid search warrant to enter Plaintiffs' home.

24. At no time did Defendant police officers have exigent circumstances to enter Plaintiffs' apartment.

25. Following the Defendant officers breaking down the front door of Plaintiffs' home, the Defendant police officers stormed into Plaintiffs' home with their loaded guns drawn and were chaotically yelling, swearing, and pointing their loaded weapons at all Plaintiffs.

26. Plaintiffs were immediately terrorized with what was going on around them in their own home. Plaintiffs Redmond and Starks could hear the children screaming in fear in the other bedroom.

27. At gun point, Defendant police officers immediately ordered Plaintiffs Dominique Redmond and Mickey Starks to the ground and placed them in handcuffs. Terrified that they were going to be shot and killed, Plaintiffs Redmond and Starks immediately complied.

28. The Defendant police officers proceeded to secure the traumatized children at gunpoint in a bedroom.

29. At some point, Defendant police officers physically relocated Plaintiffs Redmond and Starks into the living room where they remained forcefully detained in handcuffs as officers continued to remain in their home and search their home with their loaded weapons drawn.

30. Defendant police officers than relocated the three children from the bedroom into the living room where the children witnessed Plaintiffs Redmond and Starks detained in handcuffs. During this time, Defendant police officers continued to have their loaded weapons exposed to intimidate Plaintiffs.

31. Following their unlawful entry and use of unreasonable force, Defendant police officers continued to search Plaintiffs' residence.

32. Following their unlawful entry into Plaintiffs' home, Defendants officers detained all Plaintiffs inside the residences and the Plaintiffs were not free to leave.

33. At no time did Defendant officers show Plaintiffs a search warrant.

34. At no time did Defendant offices tell Plaintiffs why they were searching their home.

35. Defendant officers illegally searched and remained in Plaintiffs' residence for roughly 30-35 minutes.

36. On March 14, 2018, Defendant officers did enter Plaintiffs' residence intentionally.

37. On March 14, 2018, Defendant officers did intentionally break down Plaintiffs' front door to their residence.

4

38. On March 14, 2018, Defendant officers had no probable cause or exigent circumstances to enter Plaintiffs home.

39. On March 14, 2018, Defendant officers did detain Plaintiffs intentionally.

40. On March 14, 2018, Defendant officers had no probable cause to detain Plaintiffs.

41. On March 14, 2018, Defendant officers did intentionally drew their weapons at Plaintiffs.

42. At no time did any of the Plaintiffs threaten Defendant Officers or act in any way to justify Defendant Officers drawing their weapons at them.

43. Defendant officers found nothing illegal during their search. They arrested and charged no one.

44. At some point, Plaintiffs heard a Defendant police officer state that they had executed the search warrant at the wrong residences and at the completely wrong building set forth in the search warrant.

45. Upon information and belief, Defendant police officers had a search warrant for the address 1217 W. 81st Street, not Plaintiffs' address of 1225 W. 81st Street.

46. Throughout this entire time, Plaintiffs were terrified that the Defendant police officers would shoot them or a family member.

47. At no time during this illegal conduct did the Defendant police officers modify their use of force when they saw that numerous children were present, instead Defendant police officers continued to point and display their loaded weapons at the complying, innocent, and terrified Plaintiffs and minor children.

48. Defendant police officers continued to point and expose their loaded weapons at Plaintiffs despite knowing that the Plaintiffs did not pose any risk of harm or flight to the officers.

49. Defendant police officers continued to search Plaintiffs home despite knowing the were in the wrong home and had no valid search warrant.

50. Following this incident, Plaintiffs filed a complaint with the City of Chicago. After writing that complaint, a Chicago police supervisor came to Plaintiff Dominque Redmond and took the complaint. The complaint however was than altered by a Chicago police officer with false facts about what occurred, including taking out what Plaintiff wrote that the officers did not knock and announce their office prior to their forced entry.

51. At all times relevant hereto, Plaintiffs were obeying all laws, rules, and statutes of the United States of America, the State of Illinois, and the City of Chicago.

52. As a direct result of the Defendants acts and/or omissions including exposing Plaintiffs to unnecessary, unreasonable, and terrifying conduct, Plaintiffs now suffer from emotional and psychological distress and injury.

53. Upon information and belief, the City of Chicago or the Chicago Police Department has not disciplined any of the police officers involved in the warrantless raid of Plaintiffs home.

54. Prior to the warrantless raid of Plaintiffs' home, the City of Chicago and the Superintendent of the Chicago Police Department were aware of the recurring problem and pattern of improperly executed search warrants and warrantless raids on Chicago civilians' homes by Chicago police officers throughout this City, yet have failed to attempt to remedy this obvious problem in any meaningful way.

## COUNT I
## 42 U.S.C. § 1983 – Excessive Force

55. Each Paragraph of this Complaint is incorporated herein.

56. As described above, the misconduct of Defendant Officers constituted unjustified and excessive force in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

57. The misconduct described in this Count was objectively unreasonable, unprovoked, unnecessary and excessive.

58. The misconduct described in this Count was undertaken intentionally with willful and wanton disregard to Plaintiff's constitutional rights.

59. As a result of Defendant Officers' unjustified and excessive use of force, all Plaintiffs have suffered injuries, including emotional, psychological, and mental distress.

## COUNT II
## 42 U.S.C. § 1983 – Unlawful Search and Seizure

60. Each Paragraph of this Complaint is incorporated herein.

61. As described in the preceding paragraphs, Defendant Officers violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure by seizing Plaintiffs without justification and without probable cause.

62. Defendant Officers searched Plaintiffs' home and persons without a search warrant and without probable cause to believe Plaintiffs were committing or had committed a crime in violation of the Fourth Amendment of the United States Constitution.

63. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

64. As a result of Defendant Officers unjustified and unreasonable conduct, Plaintiffs have suffered injuries, including emotional, psychological, and mental distress.

## COUNT III
## 42 U.S.C. § 1983 – Failure to Intervene

65. Each Paragraph of this Complaint is incorporated herein.

66. During the constitutional violations as described in this complaint, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

67. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

68. As a result of this failure to intervene to prevent the violations of Plaintiffs' constitutional rights, Plaintiffs pain and injury, as well as emotional, psychological, and mental distress. These Defendant Officers had a reasonable opportunity to prevent this harm but failed to do so.

## COUNT IV
## 42 U.S.C. § 1983 – Supervisory Liability
## (Against Defendant Sergeant P. Thompson)

69. Each Paragraph of this Complaint is incorporated herein.

70. As described above, Defendant Officers unlawfully entered Plaintiffs' home, seized Plaintiffs, and used excessive force causing Plaintiffs pain and injury.

71. Defendant P. Thompson was a sergeant or supervisory-level police officer on the Chicago Police Department, and as such, it was his responsibility to supervise the conduct of the other Defendant Officers who took part in the constitutional misconduct as described above.

72. Rather than properly supervise the other Defendant Officers, the Supervising Defendant Officer condoned the unlawful behavior of the other Defendant Officers and failed to take appropriate steps to stop it.

73. As a direct and proximate result of Defendant Supervising Officer Thompson's failure to supervise the other Defendant Officers, Plaintiffs suffered pain and injury.

## COUNT V
## 42 U.S.C. § 1983 – *Monell* Claim

74. Each Paragraph of this Complaint is incorporated herein.

75. The misconduct describe above and in this count was undertaken pursuant to Defendant City of Chicago's official policies and/or widespread policy, custom, and practice that is so permanent and well settled as to constitute a custom or usage with the force of law in that

the acts or omissions of Defendant City has: (1) failed to adequately train, supervise, and control its Chicago police officers from making unlawful and unconstitutional entries and searches of Chicago residences homes and the use of force against children or in the children presences; (2) failed to establish, despite the obviously need, any policies or safeguards that ensure Chicago police officers execute search warrants on the correct listed address; (3) failed to have any adequate policy concerning the use of force and excessive force on, in the presence of, and in situations involving young children; (4) failed to investigate, discipline, and hold accountable Chicago police officers that commit illegal warrantless entries into Chicago residences homes and/or use unreasonable force against children during these illegal searches.

76. Defendant City's failed policies, practices, and customs were so obviously deficient that it rises to the level of deliberate indifference and conscious disregard to Plaintiffs' rights.

77. The result of one or more of the failed policies, practices, or customs as described in this Complaint, Chicago police officers have engaged in and continue to engage in a pattern of constitutional violations similar to the misconduct that occurred against the Plaintiffs. The City has persistently failed to respond, reform, discipline, investigate, and correct these practices which in turn was the moving force behind the constitutional misconduct committed against Plaintiffs.

78. Defendant City is well aware that unlawful warrantless searches of Chicago residents and their homes have been a widespread problem for years, yet despite this knowledge the City has failed to make any reforms, failed to update its training programs to address these problems with its police personnel, and failed to hold its officers accountable for participating and engaging in such misconduct. Instead, the City has turned a blind-eye which causes Chicago police officers to believe that they may commit this misconduct with impunity.

79. The Defendant City has been aware that a problem exists with Chicago police officers unconstitutionally invading, searching, and using force against Chicago residents, their children, and their homes through numerous civilian complaints made against Chicago police officers for such actions, numerous civil rights lawsuits being filed for similar misconduct against its officers, and numerous settlements made for similar misconduct litigation against the City and its officers.

80. For example, the City of Chicago has been sued for similar misconduct for the November 7, 2017, unconstitutional entry into the home of a Chicago resident, where Chicago police officers pointed weapons at young children after illegal entering their home. *Mendez, et al. v. City of Chicago,* 18 CV 5560.

81. On August 29, 2014, Chicago police officers forcefully entered the home of a Chicago resident and her family, terrorizing the family with weapons, including a Chicago police officer pointing a loaded gun inches from the chest of a three-year-old child. As was widely reported, the City paid a settlement of $2.5 million in the case. *Simmons v City of Chicago*, 14 CV 2017.

8

82. Chicago police officers have a *de facto* policy, widespread custom, or practice of using unreasonable and unnecessary force against children and in the presences of young children, yet the City of Chicago has done nothing to investigate, discipline, or hold accountable officers for this misconduct. Instead, the City has turned a blind-eye which causes Chicago police officers to believe that they may commit this misconduct with impunity.

83. The 2017 United States Department of Justice investigation into the CPD concluded the CPD has a pattern and practice of using less-than-lethal, excessive force against children for non-criminal conduct. (Investigation of the Chicago Police Department, U.S. Dept. Justice, Jan. 13, 2017, pp. 34-35). Yet, the City of Chicago has failed to reform any policies that require officers to avoid pointing guns and using force against children or in the presence of children whenever possible, despite the City being aware of the significant trauma that such violent actions cause young children.

84. The Defendant Officers' conduct toward and in the presence of the minor children in this case was done pursuant to Defendant City's widespread practice and custom of failing to have any policy requiring or guiding officers to avoid using force or brandishing their service weapons against young children or against their adult relatives in the children's presences or to de-escalate themselves when they encounter children.

85. The omission of any CPD policy regarding brandishing weapons at children or in the presences of children was so obviously deficient that it rises to the level of deliberate indifference and conscious disregard to the constitutional rights of Plaintiffs and was thus the moving force and cause of Plaintiffs constitutional injuries.

86. The failed policies and practices of the City of Chicago directly caused and were the moving force of Plaintiffs' highly predictable constitutional injury. The acts and/or omissions of the City of Chicago were done with conscious disregard and deliberate indifference to Plaintiffs' connotational rights.

87. As a direct result of the City of Chicago's failed policies and practices as described above, Plaintiffs suffered injuries, including pain, suffering, and emotional distress and trauma.

## COUNT VI
### Illinois State Law – Assault
### (Minor Plaintiffs ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT)

88. Each Paragraph of this Complaint is incorporated herein.

89. The actions of the officers set forth above created reasonable apprehension in Plaintiffs of immediate harmful contact to Plaintiffs' persons.

90. The officers intended to bring about apprehension of immediate harmful contact eith Plaintiffs or knew that their actions would bring about such apprehensions.

91. The officers' actions were the direct and proximate cause of Plaintiffs' apprehension.

9

92. Plaintiffs have been seriously harmed by officers' actions.

## COUNT VII
## Illinois State Law – Trespass
### (Minor Plaintiffs ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT)

93. Each Paragraph of this Complaint is incorporated herein.

94. Officers physically invaded Plaintiffs' right to an enjoyment of exclusive possession of their apartment.

95. Officers intentionally physically invaded Plaintiffs home by force without any legal right to do so and did so without consent of Plaintiffs.

96. Officers' actions caused a physical invasion of Plaintiffs' home.

97. Plaintiffs were harmed by officers' physical invasion of their home.

## COUNT VIII – State Law Claim
## False Imprisonment
### (Minor Plaintiffs ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT)

98. Each paragraph of this Complaint is incorporated herein.

99. As described above, Plaintiffs were restrained and detained by Defendant Officers, and thereby had their liberty to move about unlawfully restricted.

100. Defendant Officers had no reasonable ground to believe that Plaintiffs were committing any offense that would justify the restraint.

101. The actions of Defendants were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

102. As a result of this wrongful infringement of Plaintiffs' rights, Plaintiffs suffered injuries, including emotional distress.

## COUNT IX – State Law Claim
## Intentional Infliction of Emotional Distress
### (Minor Plaintiffs ARIANNA REDMOND, ARNOLD PRATT, and ARION PRATT)

103. Each paragraph of this Complaint is incorporated herein.

104. The actions, omissions, and conduct of Defendant Officers were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that this conduct would cause severe emotional distress to Plaintiffs, as is more fully alleged above.

105. As a direct and proximate cause of Defendants' actions, Plaintiffs suffered injuries, including emotional distress.

## COUNT X – State Law Claim
### *Respondeat Superior*

106. Each paragraph of this Complaint is incorporated herein.

107. In committing the acts alleged in the preceding paragraphs, Defendant Officers were an employee of Defendant City of Chicago acting at all relevant times within the scope of his employment.

108. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT XI – State Law Claim
### Indemnification

109. Each paragraph of this Complaint is incorporated herein.

110. In each act described above, Defendant Officers were acting with the scope of their employment as a Chicago Police Officers employed by Defendant City of Chicago.

111. Illinois law provides that the City of Chicago must pay any civil and constitutional rights judgments for damages for which employees are liable within the scope of their employment.

112. Defendant Officers were employees of Defendant City of Chicago and acting within the scope of their employment and under color of law in committing the misconduct described herein.

113. Pursuant to the provisions of Illinois law, including but not limited to 105 ILCS 5/10-20.20, Defendant City of Chicago is required to pay all sums due by judgment against Defendant Officers.

*****

**WHEREFORE**, Plaintiffs Dominique Redmond, on behalf of herself and her three minor children Arianna Redmond, Arnold Pratt, and Arion Pratt and Mickey Starks respectfully requests that this Court enter judgment in their favor on each count and against the Defendants, awarding compensatory damages, attorneys' fees and costs, along with punitive damages against Defendant Officers in their individual capacity, and any further relief as the Court deems just and appropriate.

### Jury Demand

Plaintiffs hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

s/ Jeffrey B. Granich
One of Plaintiffs' attorneys

Law Office of Jeffrey B. Granich
53 W. Jackson, Suite 1028
Chicago, Illinois 60604
312-939-9009
JeffreyGranich@gmail.com
Atty No.: 6207030

12